*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **AROLDO ALBERTO RODRIGUEZ DIAZ**, <br> Petitioner, <br> v. <br> **WILLIAM P. BARR, ET AL.**, <br> Respondents. | Case No.  4:20-cv-01806-YGR <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PETITION AND TEMPORARY RESTRAINING ORDER** <br> Re: Dkt. Nos. 1, 1-1, |

Petitioner Aroldo Alberto Rodriguez Diaz filed this petition for writ of habeas corpus and temporary restraining order against respondents William P. Barr, Chad Wolf, David Jennings, and Wendell Anderson.  (Dkt. Nos. 1, 1-1.)  Rodriguez Diaz requests that the Court: (1) declare his detention without a custody hearing by respondents as unconstitutional and in violation of the Immigration and Nationality Act ("INA"); (2) order his immediate release from Immigration and Customs Enforcement ("ICE"); or, alternatively; (3) order respondents to provide immediately a custody hearing at which the government is required to justify continued detention by clear and convincing evidence that Rodriguez Diaz is a danger or flight risk.

Having carefully reviewed the record, the papers submitted, and for the reasons set forth more fully below, the Court **HEREBY ORDERS** as follows: (1) the petition is **GRANTED IN PART** and **DENIED IN PART**; and (2) the temporary restraining order is **GRANTED IN PART** and **DENIED IN PART**.

I.   **BACKGROUND**

In order to expedite the issuance of this order, the Court assumes familiarity with the details of this matter and only summarizes the background relevant to this Order.  Thus:

Rodriguez Diaz is a citizen of El Salvador who came to the United States on an unknown date, at an unknown location and without being admitted.

After his release from state custody, on November 2, 2011, Rodriguez Diaz was transferred to ICE custody and ICE placed him into removal proceedings. He was charged as an alien present in the United States without being inspected, admitted, or paroled. On January 20, 2012, Rodriguez Diaz was released from the custody of the Office of Refugee Resettlement. Rodriguez Diaz's removal proceedings continued while he was not in detention.

After being released, Rodriguez Diaz was involved in several criminal incidents, including: (1) arrested and later charged for battery on a person on school, park, or other property and battery on a person resulting in serious bodily injury; (2) arrested for and charged with possession of burglary tools; and (3) charged with possession of a controlled substance.

On August 3, 2018, Rodriguez Diaz was arrested for a domestic dispute incident with his wife. On December 18, 2018, Rodriguez Diaz was convicted of battery on a spouse and intimidating or dissuading a witness, for which he was sentenced to 18 months' probation and 276 days' jail and months' probation, respectively. After his release from criminal custody, ICE took Rodriguez Diaz into custody on December 18, 2018.

On February 27, 2019, Rodriguez Diaz appeared before the Immigration Judge ("IJ") for a custody redetermination. During the hearing, Rodriguez Diaz's counsel and the attorney for ICE asked Rodriguez Diaz questions regarding his alleged gang affiliation. After being placed under oath, Rodriguez Diaz testified that he was never in a gang and that he was never jumped into a gang. He also testified that his tattoo of "C.L." stood for "California Life" and did not stand for "Carnales Locos." Rodriguez Diaz's counsel also made an offer of proof regarding the circumstance surrounding his conviction for battery on a spouse and intimidating a witness. At the conclusion of the hearing, the IJ stated that it appeared that Rodriguez Diaz was a gang member, and denied bond, finding that Rodriguez Diaz was a danger to the community. Rodriguez Diaz did not appeal that determination.

On May 13, 2019, the IJ denied Rodriguez Diaz's applications for relief and ordered him removed from the United States. Rodriguez Diaz appealed the IJ's ruling to the Board of

1  Immigration Appeals ("BIA"), and on October 17, 2019, the BIA dismissed Rodriguez Diaz's
2  appeal. On October 17, 2019, Rodriguez Diaz filed a petition for review with the Ninth Circuit
3  and requested a stay of removal. *See Rodriguez Diaz v. Barr*, 19-72634 (9th Cir.).

4  Rodriguez Diaz's conviction for possession of a controlled substance was vacated on
5  September 16, 2019. On February 5, 2020, Rodriguez Diaz filed a motion with for a new custody
6  redetermination pursuant to 8 U.S.C. § 1003.19(e).[1] In the motion, Rodriguez Diaz asserts that
7  there has been a material change in circumstances because his conviction for possession of a
8  controlled substance had been vacated and because he has made significant efforts at
9  rehabilitation. In the declaration in support of his motion, Rodriguez Diaz now admits that he was
10 jumped into a gang and that his tattoos stand for Carnales Locos, but that he has since disclaimed
11 any membership in such gang.

12 On February 24, 2020, the IJ denied Rodriguez Diaz's motion. On March 26, 2020, the IJ
13 issued its memorandum explaining the reasoning for the denial concluding as follows:

> The Court finds that the evidence submitted by Respondent does not establish any material change in circumstance that would warrant another custody hearing. Importantly, Respondent, while under oath before the Court, denied ever being a part of a gang and only associating or hanging out with gang members and denied that the C & L tattoo stood for Camales Locos.
>
> However, his sworn declaration he admits to being in a gang and that the C & L tattoo stood for Camales Locos. Respondent in his custody hearing attempted to either minimize or completely deny his involvement with any gang activity in order to obtain release from custody. Respondent's previous testimony is contradicted by his declaration and the Court can give little weight to the statements he makes in his declaration that he is no longer active in the gang and thathecompletelycuttieswiththegangin2017. Though the Court applauds Respondent in taking classes to attempt to better himself and acknowledges his conviction for CHSC § 11350 being vacated and repled to CPC § 32, the Court found Respondent to be a danger to the community based on his gang membership and the evidence submitted does nothing to materially alter the Court's conclusion.

(Dkt. No. 9-2 at 2-3.)

---

[1] On or about February 12, 2020, Rodriguez Diaz sought a stay of his petition for review in the Ninth Circuit proceedings pending a decision on the motion to reopen.

Rodriguez Diaz appealed to the BIA and filed the instant petition and temporary restraining order on March 13, 2020. On March 16, 2020, the Court ordered respondents to respond by noon on March 20, 2020. (Dkt. No. 6.) Based on that response in opposition and return to petition, the Court issued another order permitting Rodriguez Diaz a reply and traverse to the government's briefing, stating that it had serious concerns as to the merits of the petition and the temporary restraining order. (Dkt. No. 8.) Following the filing of the reply and traverse, the parties requested permission to file supplemental briefing on the issue of the ongoing coronavirus disease (COVID 19) pandemic (Dkt. No. 10), which the Court later granted (Dkt. No. 12).

During the pendency of this matter and his immigration action, Rodriguez Diaz is being detained at Yuba County Jail, which, as of the filing of the government's supplemental brief on April 23, 2020, had no suspected or confirmed COVID-19 cases.

## II.   LEGAL STANDARD

### A.   Habeas Petitions Regarding Custody Redetermination

The parties agree that, under Ninth Circuit law, Rodriguez Diaz is detained pursuant to 8 U.S.C. § 1226(a) because he has a currently pending petition for review in the Ninth Circuit and has an associated temporary stay of removal. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1065 (9th Cir. 2008). "After an alien is detained, the DHS [Department of Homeland Security] district director makes an initial custody determination and may allow the alien's release on bond. If the alien objects to the director's bond determination, he may request a bond redetermination hearing before an IJ at any time before the issuance of an administratively final order of removal." *Id.* at 1058 (citing 8 C.F.R. § 236.1(d); 8 C.F.R. § 1003.19(c)).

In making a bond determination, the IJ should consider "any or all" of the following factors:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the *960 extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Matter of Guerra*, 24 I & N Dec. 37, 40 (BIA 2006); *see also Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011) (applying *Matter of Guerra* to § 1226(a)). The IJ has "broad discretion in deciding the factors that he or she may consider" and "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Matter of Guerra*, 24 I & N Dec. at 40.

A detainee may appeal the IJ's determination to the BIA. 8 C.F.R. § 1003.19(f). A detainee may also request a subsequent bond redetermination from the IJ, but the request "shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." *Id*. § 1003.19(e).

### B.     Temporary Restraining Order

Requests for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.,* 434 U.S. 1345, 1347 n.2 (1977); *Stuhlbarg lnt'l Sales Co., Inc. v. John D. Brush & Co., Inc.,* 240 F.3d 832, 839 n. 7 (9th Cir. 2001). Preliminary injunctive relief, whether in the form of a temporary restraining order or a preliminary injunction, is an "extraordinary and drastic remedy," that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008) (internal citations omitted). In order to obtain such relief, plaintiffs must establish four factors: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council. Inc.,* 555 U.S. 7, 20 (2008).

With respect to the success on the merits and balance of harms factors, courts will permit a party making a strong showing on one factor to offset a weaker showing on the other, so long as all four factors are established. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). For example, if the balance of hardships tips *sharply* in a party's favor, they may satisfy the likelihood of success factor by showing that there are at least "serious questions" favoring the merits of their claim. *Id.*

### III.    ANALYSIS

Here, the Court first decides on issues of jurisdiction and exhaustion, before deciding the merits of the petition and the temporary restraining order.

Jurisdiction. The Court concludes that it has jurisdiction in this matter: Individuals who are "dissatisfied with the IJ's bond determination may file an administrative appeal so that the necessity of detention can be reviewed by the BIA. If they remain dissatisfied, they may file a petition for habeas corpus in the district court. They may then appeal to [the Court of Appeals]." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (internal quotation marks, alteration, and citations omitted).

Under 8 U.S.C. § 1226(e), "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." Nevertheless, "a federal district court has habeas jurisdiction under 28 U.S.C. § 2241 to review . . . bond hearing determinations for constitutional claims and legal error." *Singh*, 638 F.3d at 1200; *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (8 U.S.C. "§ 1226(e) does not preclude 'challenges [to] the statutory framework that permits [the alien's] detention without bail." (alterations in original) (quoting *Demore v. Kim*, 538 U.S. 510, 517, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003))). Section 1226(e) "does not limit habeas jurisdiction over constitutional claims or questions of law," which, as the Ninth Circuit has explained, "includ[e] 'application of law to undisputed facts, sometimes referred to as mixed questions of law and fact.' " *Singh*, 638 F.3d at 1202 (quoting *Ramadan v. Gonzales*, 479 F.3d 646, 648 (9th Cir. 2007) (per curiam)).

However, while a district court has jurisdiction to review mixed questions of law and fact, it must be careful not to encroach upon "the IJ's discretionary weighing of the evidence." *Slim v. Nielson*, No. 18-cv-02816-DMR, 2018 WL 4110551, at *4 (N.D. Cal. Aug. 29, 2018). Pursuant to § 1226(e), "discretionary decisions granting or denying bond are not subject to judicial review." *Prieto-Romero*, 534 F.3d at 1058. Accordingly, where a habeas petitioner "asks the Court to second-guess the IJ's weighing of the evidence, that claim is directed solely to the IJ's discretion and is unreviewable." *De La Cruz Sales v. Johnson*, 323 F. Supp. 3d 1131, 1138-39 (N.D. Cal. 2017). That said, Section 1226(e) does not bar courts from concluding that "[t]he evidence before the IJ failed, as a matter of law, to prove flight risk or danger." *Judulang v. Chertoff*, 562 F. Supp.

6

2d 1119, 1127 (S.D. Cal. 2008); *see Slim*, 2018 WL 4110551, at *4-5 (distinguishing between an unreviewable challenge to "the IJ's discretionary weighing of the evidence" and permissible challenges to "whether the party bearing the burden of proof met the applicable quantum of evidence").

Accordingly, as applied to this case, the Court has jurisdiction to review the IJ's denial of a request for a new bond hearing under 8 C.F.R. § 1003.19(e) to determine "whether the IJ failed as a matter of law in determining that Petitioner did not show that his circumstances had materially changed," and whether denial of a new bond hearing violated the petitioner's right to due process. *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 772-73 (N.D. Cal. 2019).

<u>Exhaustion</u>. The Court finds that waiver of the exhaustion requirement is appropriate in this matter: "The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims" challenging bond determinations under 8 U.S.C. § 1226(a). *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Applying the prudential exhaustion requirement is appropriate when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). But a court may nonetheless waive the exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

Here, waiver of the exhaustion requirement is appropriate. First, "the BIA has no jurisdiction to decide questions of the constitutionality of the immigration laws." *Liu v. Waters*, 55 F.3d 421, 426 (9th Cir. 1995). As the BIA has explained, it "must apply the statute as written to the cases that come before us. It is well settled that we lack jurisdiction to rule on the constitutionality of the Act and the regulations we administer . . . . [E]ven if we were to perceive a

7

constitutional infirmity in the unambiguous statute before us, we would be without authority to remedy it." *In Re Fuentes-Campos*, 21 I. & N. Dec. 905, 912 (BIA 1997). The BIA therefore is without authority to address the constitutional arguments Rodriguez Diaz raises in this petition.

Second, Rodriguez Diaz would suffer irreparable injury if this Court did not waive the exhaustion requirement. Rodriguez Diaz would continue to be in custody, arguably in violation of his due process rights. He "suffers potentially irreparable harm every day that he remains in custody without a hearing, which could ultimately result in his release from detention." *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018) (citation omitted). The government argues that Rodriguez Diaz's claimed irreparable harms are "common to all aliens seeking review of their custody or bond determinations." (Dkt. No. 7 at 16 (quoting *Resendiz v. Holder*, No. 12-04850 WHA, 2012 WL 5451162, at *5 (N.D. Cal. Nov. 7, 2012).) However, although some of the effects of detention on Rodriguez Diaz are "the same type of harm any person who is detained may suffer, they are [nonetheless] irreparable in nature." *Lopez Reyes v. Bonnar*, No. 18-cv-07429-SK, 2018 WL 7474861, at *7 (N.D. Cal. Dec. 24, 2018).

Finally, the Court follows the vast majority of cases that have waived exhaustion based on irreparable injury when an individual has been detained for months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal. *E.g., De Paz Sales v. Barr*, No. 19-cv-04148-KAW, 2019 WL 4751894, at *4-5 (N.D. Cal. Sept. 30, 2019); *Lopez Reyes*, 2018 WL 7474861, at *6-7; *Cortez*, 318 F. Supp. 3d at 1138-39; *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003-04 (N.D. Cal. 2018).

Merits. For the reasons below, the Court concludes that Rodriguez's Diaz detention has been so prolonged that due process requires he be given a bond hearing at which the government bears the burden of proving dangerousness or flight risk by clear and convincing evidence. However, the Court concludes that Rodriguez Diaz has not satisfied based on the record before the Court that he neither a flight risk nor a danger to the community as a matter of law. The Court first address Rodriguez Diaz's request for a custody redetermination hearing (bond hearing).

**Custody Redetermination Hearing**: Here, it is undisputed by the parties that the IJ's analysis neither shifted the burden to the government, nor did the IJ require that the government

8

1    prove Rodriguez Diaz's continued detention through clear and convincing evidence. Instead, the
2    IJ denied Rodriguez Diaz's motion for a new bond hearing on the basis that Rodriguez Diaz failed
3    to meet his burden to demonstrate a material change in circumstances as required for a new bond
4    hearing under 8 C.F.R. § 1003.19(e).

5    As an initial matter, the government avers that, because Rodriguez Diaz already received
6    an initial custody determination in February 2019, he is not entitled to another custody
7    determination. These arguments do not persuade. Several district courts have concluded that
8    where "the government detains an immigrant under 8 U.S.C. § 1226(a) for a prolonged period,
9    that individual is entitled to a hearing at which the government bears the burden of showing risk of
10   flight or dangerousness by clear and convincing evidence." *Marroquin Ambriz v. Barr*, 420 F.
11   Supp. 3d 953, 965-66 (N.D. Cal. 2019). *See also De Paz Sales*, 2019 WL 4751894, at *8
12   (ordering "the Government to provide Petitioner with another bond hearing within twenty-one
13   days," and that "[a]t the hearing, the Government must establish by clear and convincing evidence
14   that Petitioner is a flight risk or a danger to the community to continue his detention"); *Lopez*
15   *Reyes*, 362 F. Supp. 3d at 777 ("The material change in circumstances coupled with the passage of
16   time are the factors requiring an additional bond hearing to satisfy due process"). Indeed, as
17   *Marroquin Ambriz* observes, "several courts in this district have conducted an individualized
18   inquiry to determine whether a petitioner's prolonged detention requires an additional bond
19   hearing." 420 F. Supp. 3d at 963. Thus:

> For example, one court concluded that, "[b]ecause Petitioner has not identified any binding Ninth Circuit or Supreme Court case-law that establishes Petitioner's categorical right to a periodic bond hearing, the Court must conduct an individualized due process analysis pursuant to the conventional *Mathews v. Eldridge*, 424 U.S. 319 [96 S.Ct. 893, 47 L.Ed.2d 18] (1976) factors": "(1) the private interest affected, (2) the government's interest, and (3) the value added by alternative procedural safeguards to what has already been provided in the particular situation before the court." *Soto v. Sessions*, No. 18-cv-02891-EMC, 2018 WL 3619727, at *3 (N.D. Cal. July 30, 2018); *see also Lopez Reyes*, 2018 WL 7474861, at *9-10 (following Soto). Another court determined "that the decision depends on the individual circumstances of each case," but explained that the length of the petitioner's detention is the most important factor and that, "[i]n general, as detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Gonzalez v. Bonnar*, No. 18-cv-05321-JSC, 2019 WL 330906, at *2-5 (N.D. Cal. Jan. 25, 2019).

9

*Id.*

Considering the individual circumstances of Rodriguez Diaz's detention, the Court determines that a custody redetermination hearing is appropriate. First, the Court finds that Rodriguez Diaz has a strong privacy interest given that he has been in custody for approximately 16 months and his last bond hearing was nearly 14 months ago. *See Marroquin Ambriz*, 420 F. Supp. 3d at 963 ("There is no question in this case that Marroquin Ambriz has a strong private interest given that he has been in custody for 17 months and his last bond hearing was nearly 15 months ago.") (collecting cases); *see also De Paz Sales*, 2019 WL 4751894, at *5-7 (finding prolonged detention after more than 14 months in custody without a bond hearing for over a year); *Sotelo Tarin v. Bonnar*, No. 19-cv-00519-CRB, 2019 WL 568921, at *7 (N.D. Cal. Feb. 12, 2019) (finding petitioner who had been detained for 15 months "likely to succeed in arguing that [he] had a due process right to a bond hearing"); *Gonzalez*, 2019 WL 330906, at *3-5 (finding "prolonged detention without an individual bond hearing violates [the petitioner's] due process rights" where "detention has lasted just over a year and will last at least 15-17 months in total"); *Lopez Reyes*, 2018 WL 7474861, at *10 (finding "that Petitioner's detention has been long and that his private interest is strong" where "Petitioner has now been detained for twenty-one months, and over a year has passed since his last bond hearing"); *Meza v. Bonnar*, No. 18-cv-02708-BLF, 2018 WL 2554572, at *3 (N.D. Cal. June 4, 2018) (finding "serious questions going to the merits of Petitioner's claim that the Constitution requires periodic bond hearings for aliens in removal proceedings who have been detained for lengthy periods of time – here, 13 months").[2]

The government's arguments that Rodriguez Diaz's current length of detention does not constitute a prolonged detention do not persuade. "As the government correctly observes, [Rodriguez Diaz] is responsible for at least some of the time during which he was detained

---

[2] As these other district courts declined to define a a specific length of time that would constitute a prolonged detention requiring an individualized bond determination, so too does this Court decline to define this line. Instead, as noted above, Rodriguez Diaz's length of his detention is similar to other durations where district courts have found a prolonged detention requiring an individualized bond determination where the government bears the burden by a heightened evidentiary standard.

1  because he . . . chose to appeal the IJ's adverse [decisions, b]ut [t]he government's suggestion that

2  [Rodriguez Diaz's] choice to appeal . . . adverse rulings weighs against any constitutional claim

3  that he may make regarding his detention during the course of the appeal is untenable and the

4  Court will not require that a petitioner who pursues his available legal remedies must forego any

5  challenge to the reasonableness of his detention in the interim." *Marroquin Ambriz*, 420 F. Supp.

6  3d at 963-64 (internal quotation marks omitted). And, "weighing in [Rodriguez Diaz's] favor on

7  this point are the facts that he is being detained at Yuba County Jail, a penal institution." *Id.*

8  Thus, the Court finds that Rodriguez Diaz has a strong privacy interest.

9  Second, the Court concludes that the government's interest is less strong here in this

10  matter. Where, as here, the interest "at stake . . . is the ability to detain [p]etitioner without

11  providing him with another bond hearing, not whether the government may continue to detain

12  him, and it is not contested that the cost of conducting a bond hearing, to determine whether the

13  continued detention of [p]etitioner is justified, is minimal." *Id.* at 964 (citing *Lopez Reyes*, 362 F.

14  Supp. 3d at 777 ). And "requiring the government to provide [p]etitioner with another bond

15  hearing does not significantly undermine the government's interest in evaluating the evidence and

16  in making . . . credibility determinations. If the Court requires the government to provide the

17  [p]etitioner with another hearing, the IJ would still be the trier of fact at any such hearing." *Id*.

18  (citing *Lopez Reyes*, 362 F. Supp. 3d at 777).

19  Third, the government's arguments that *Jennings* has abrogated the holdings of *Singh* and

20  *Rodriguez* – shifting the burden to the government and requiring a higher standard of proof – do

21  not persuade. As the district court in *Marroquin Ambriz* observed:

22  
23  
24  
25  
26  
27  
> [T]he Supreme Court [in *Jennings*] explicitly did not consider whether either of these requirements was required under the Constitution; instead, it "remand[ed] the case to the Court of Appeals to consider [the constitutional arguments] in the first instance." 138 S. Ct. at 851. The Court of Appeals, in turn, remanded the case to the district court to consider these and other arguments. *Rodriguez v. Marin*, 909 F.3d 252, 257 (9th Cir. 2018). In doing so, the court expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Id*. at 256.

28

11

420 F. Supp. 3d 962-63. Thus, the Court similarly concludes that *Jennings* did not foreclose the relief sought by Rodriguez Diaz in this petition.

Accordingly, Rodriguez Diaz's detention has been prolonged, with strong private interests that outweigh the government's interests. "He is therefore entitled to a bond hearing at which 'the government must prove by clear and convincing evidence that [he] is a flight risk or a danger to the community to justify denial of bond.'" *Marroquin Ambriz*, 420 F. Supp. 3d at 964 (quoting *Singh*, 638 F.3d at 1203). Thus, in light of the foregoing, with respect to the custody redetermination, the Court **GRANTS IN PART** the petition and the temporary restraining order.

**Release From Custody**: Having reviewed the record, the Court concludes that Rodriguez Diaz has not met his burden in demonstrating that, as a matter of law, he is neither a flight risk or a danger to the community to warrant the extraordinary remedy – either through the petition or the temporary restraining order – of his immediate release from ICE custody.

First, Rodriguez Diaz fails to show the merits of his underlying request for release. The Court notes that the IJ – as the typical fact finder in immigration proceedings – has not had an opportunity to conduct an appropriate hearing where the government will bear the burden of proof in demonstrating his continued detention by clear and convincing evidence. And, absent evidence demonstrating that, as a matter of law, Rodriguez Diaz is entitled to be released, the Court is without jurisdiction to so order. *See Judulang*, 562 F. Supp. 2d at 1127; *Slim*, 2018 WL 4110551, at \*4-5. The Court finds that the record before it is certainly not at this high threshold to order Rodriguez Diaz immediately released. Thus, Rodriguez Diaz has failed to demonstrate any merits to his request to be immediately released from ICE custody.

Second, Rodriguez Diaz demonstrates no irreparable harm or injury that would warrant his immediate release from ICE custody. This is especially so where the Court has ordered that Rodriguez Diaz be afforded a bond hearing in conformance with due process rights. The Court notes that Rodriguez Diaz did not demonstrate any specific or unique harm or injury in support of his immediate release that would result to him in the original petition and the initial briefing; it was only in the supplemental briefing where the parties raised the specter of harm from the ongoing coronavirus pandemic. In the supplemental briefing, Rodriguez Diaz avers that he is

12

1  uniquely susceptible to complications to COVID-19 because he is Latino and is being detained in

2  a penal institution, where COVID-19 could easily spread amongst detained individuals.

3        Rodriguez Diaz's arguments do not persuade.  Even considering Rodriguez Diaz's

4  arguments and evidence regarding COVID-19 over the government's persuasive objections,[3]

5  Rodriguez Diaz fails to demonstrate any immediate harm that would befall him, where he has no

6  underlying medical conditions, and Rodriguez Diaz is an otherwise healthy man in his mid-

7  twenties.  In other words, Rodriguez Diaz alleges no medical conditions that would make him

8  more susceptible to COVID-19, nor is he in an age range which would warrant greater

9  consideration of an immediate release.  Moreover, the facility where Rodriguez Diaz is being

10 detained, Yuba County Jail, has no confirmed or suspected COVID-19 cases as of April 23, 2020.

11 Thus, Rodriguez Diaz fails to demonstrate any immediate injury or harm from his continued

12 detention that would warrant relief from the petition and temporary restraining order as to his

13 request for his immediate release.

14       Accordingly, The Court **DENIES IN PART** the petition and the temporary restraining order

15 on this basis.

## IV. CONCLUSION

Based on the foregoing reasons, the petition for writ of habeas corpus and the temporary restraining order is **GRANTED IN PART** and **DENIED IN PART**.  The Court **ORDERS** that the government must provide Rodriguez Diaz with a bond hearing before an immigration judge within

---

[3] In addition to the strong evidentiary objections raised by the government, the Court further notes that there are significant concerns with considering Rodriguez Diaz's evidence and arguments regarding COVID-19 where such arguments were not made or advanced in the underlying habeas petition: "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). Further, a party's "attempt to introduce new evidence in connection with their reply papers is improper." *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 308 n.5 (N.D. Cal. 2005); *see also Roe v. Doe,* No. C, 09-0682 PJH, 2009 WL 1883752, at *5 (N.D. Cal. June 30, 2009) ("'It is well accepted that raising of new issues and submission of new facts in [a] reply brief is improper.'") (citation omitted; brackets in original).  However, because the Court finds that even after consideration of the COVID-19 arguments raised in the supplemental briefing by Rodriguez Diaz his immediate release is not warranted and such arguments do not otherwise factor into the Court's analysis, the Court **DENIES AS MOOT** the government's objections to specific evidence in support of Rodriguez Diaz's briefing.

twenty-one (21) days of the date of this Order. At that hearing, the government will bear the burden of demonstrating, by clear and convincing evidence, that Rodriguez Diaz is a flight risk or a danger to the community.

The Clerk of the Court shall enter judgment and close this matter.

**IT IS SO ORDERED.**

Dated: April 27, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**